UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 19-24147-CIV-COOKE/GOODMAN

MAURA PROENZA,

    Plaintiff,

v.

ANDREW M. SAUL,
Commissioner of Social Security,

    Defendant.
_____/

**REPORT AND RECOMMENDATIONS ON SUMMARY JUDGMENT MOTIONS**

This case challenges a denial of social security benefits. Plaintiff Maura Proenza and Defendant Andrew M. Saul, Acting Commissioner of the Social Security Administration ("Commissioner"), filed cross-motions for summary judgment. [ECF Nos. 17; 19]. The Commissioner's summary judgment motion also served as his opposition response to Proenza's motion. [ECF No. 19]. Proenza filed a reply/response in opposition. [ECF No. 21]. According to the Clerk's directive in these types of administrative appeals, all dispositive matters have been referred to the Undersigned for a Report and Recommendations. [ECF No. 8].

As explained below, the Undersigned **respectfully recommends** that the District Court **deny** Proenza's summary judgment motion, **grant** the Commissioner's summary

1

judgment motion, and **enter a final judgment** in the Commissioner's favor.

I.  **Procedural Background**

On July 1, 2016, Proenza filed a Title II application for a period of disability and disability-insurance benefits, and a Title XVI application for supplemental security income. (R. 49, 363-70).[1] In both applications, Proenza alleged disability with an onset date of November 30, 2014. *Id.* Proenza alleges disability due to anxiety, panic attacks, and depression. (R. 113, 388). The Commissioner denied Proenza's application initially and on reconsideration. (R. 134-146; 162-175). After a hearing on August 14, 2018 (R. 68), Administrative Law Judge Lornette Reynolds (the "ALJ") concluded that Proenza was not disabled. (R. 49-61). The Appeals Council denied review of the ALJ's decision. (R. 1-5). The Commissioner's final decision is now subject to review.

II. **Factual Background**

Proenza was 49 years old at the onset of her alleged disability. (R. 59). She has a high school education, a degree in accounting from a university in Cuba, and can communicate in English. (R. 56, 59). Proenza also has previous work experience as a bookkeeper, a bakery clerk, a housekeeper, and a sandwich maker. (R. 53, 73-77, 144). She lives with a friend, who reminds her to take her medicine when she forgets. (R. 84). She also has to be reminded to attend medical visits. (R. 413). Proenza cleans and does

---

[1] Citations to ("R. __") refer to pages of the administrative record transcript. [ECF No. 11].

laundry weekly, she shops twice a week, she can drive (but doesn't do so often), and she pays her own bills by computer. (R. 78, 410-412).

## III. Applicable Legal Standards

### A. *Standard of Review*

In evaluating a claim for disability benefits, an ALJ must follow the five steps outlined in 20 C.F.R. §§ 416.920(a) and 404.1520, which the Undersigned summarizes as follows:

1. **Step one**. Is the claimant performing substantial gainful activity? If not, then an ALJ next determines:

2. **Step two**. Does the claimant have one or more severe impairments? If the claimant does, then an ALJ next considers:

3. **Step three**. Does the claimant have a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled; if not, then an ALJ must determine claimant's residual functional capacity ("RFC"); and then determine:

4. **Step four**. Based on the RFC, can claimant perform his or her past relevant work? If so, then the claimant is not disabled. If the claimant cannot perform his or her past relevant work, then an ALJ must finally determine:

5. **Step five**. Based on the claimant's age, education, and work experience, and the RFC, can he or she perform other work? If so, then the claimant is not disabled. If not, then the claimant is disabled and entitled to benefits.

*See, e.g., Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

The claimant bears the burden of proving that she is disabled within the meaning of the Social Security Act. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). In

3

reviewing the decision, the Court must consider the record as a whole and determine whether the ALJ applied the correct legal standard and whether substantial evidence in the record supports her findings of fact. *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Phillips*, 357 F.3d at 1240 n.8 (internal citation omitted). The Court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal citation omitted). And "[i]f the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Id.* (internal citation omitted).

The Court is authorized to enter a judgment affirming, modifying, or reversing the decision of an ALJ, with or without remand. 42 U.S.C. § 405(g); *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1302 n.13 (11th Cir. 2000).

### IV. The ALJ's Findings

In denying Proenza's claim for benefits, the ALJ followed the sequential five-step evaluation process for social-security claims. (R. 49-61). At step one, the ALJ concluded that Proenza had not engaged in substantial gainful activity since November 30, 2014, the alleged onset date. (R. 52).

At step two, the ALJ concluded that Proenza had the following severe

impairments: major depressive disorder and an anxiety disorder. *Id.* At step three, the ALJ concluded that Proenza did not have an impairment or combination of impairments classifiable as a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). (R. 53).

Next, the ALJ determined that Proenza has the RFC to perform the full range of medium work and that:

> [t]he claimant is able to understand, remember and carry out simple, routine and repetitive tasks and instructions; able to sustain attention/concentration for 2-hour periods at a time and for 8 hours in the workday on simple, routine and repetitive instructions; can use judgment in making work decisions related to simple, routine and repetitive tasks and instructions; able to respond appropriately to supervision; requires occupation with only occasional co-worker interaction; requires occupation with set routine and procedures, and few changes during the workday; can have only occasional interaction with the public on routine matters and no work in large group settings, such as a retail mall setting where the job would require contact with the public; no fast paced assembly-line type production work and no job where performance is evaluated based on quotas; can maintain regular attendance and be punctual within customary tolerances; and can perform activities within a schedule.

(R. 55).

At step four, aided by testimony from the vocational expert (Heidi Feder, the "VE"), the ALJ concluded that Proenza was unable to perform any past relevant work. (R. 59). The VE testified that the mental demands of Proenza's past relevant work exceed the limitations of her RFC. *Id*. The ALJ determined that Proenza is not disabled, and that considering her age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Proenza could perform. (R. 60). With

5

the assistance of the VE, the ALJ found that Proenza could perform the requirements of medium, unskilled occupations such as day worker, linen room attendant, and cleaner. *Id*.

## V. Analysis

Proenza raises three arguments to dispute the ALJ's determination that Proenza is not disabled. [ECF No. 17, p. 5]. First, Proenza argues that the ALJ failed to properly weigh the opinions her treating physicians Margarita Lermo and Rene Rocha. *Id.* at pp. 5, 10. Second, Proenza argues that the ALJ's RFC finding is not supported by substantial record evidence. *Id.* at p. 16. Third, Proenza argues that the ALJ failed to properly assess Proenza's alleged subjective symptoms and limitations. *Id.* at p. 18. For the reasons discussed below, the Undersigned does not find Proenza's arguments to be persuasive.

### A. The ALJ Adequately Considered Proenza's Medical Source Opinions in the Record.

Proenza argues that the ALJ erred by awarding "little weight" to the opinion of Proenza's treating physician, Dr. Lermo, and awarding "some weight" to the opinion of Dr. Rocha. *Id.* at pp. 5, 10. The Undersigned disagrees, because the ALJ provided good cause for providing the weight she did to Dr. Lermo's and Dr. Rocha's opinions.

Generally, an examining or treating physician's opinions are given more weight than non-examining or non-treating physicians' opinions unless "good cause" is shown to the contrary. *See* 20 C.F.R. § 404.1527(d)(1)-(2); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "Good cause" is shown where the treating physician's opinion was not

6

bolstered by the evidence, was conclusory or inconsistent with the physician's own medical records, or where the evidence supported a contrary finding. *Wilcox v. Soc. Sec. Admin, Comm'r*, 442 F. App'x 438, 440 (11th Cir. 2011); *see also Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (holding that because "the ALJ articulated several reasons for giving less weight to the treating physician's opinion[,] . . . the ALJ's determination that [the doctor's] opinion should be given little weight is supported by substantial evidence"). Moreover, an ALJ may properly discount a treating physician's opinion when "the ALJ articulated at least one specific reason for disregarding the opinion and the records supports it." *D'Andrea v. Comm'r of SSA*, 389 F. App'x 944, 948 (11th Cir. 2010).

There is no reversible error if the ALJ articulates the reasons for giving less weight to the treating physician's opinion, as long as those reasons are supported by substantial evidence. *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005); *D'Andrea*, 389 F. App'x at 947 (holding that "[w]here an ALJ articulates specific reasons for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error").

    **1.**    **Dr. Lermo**

The ALJ properly articulated why she gave little weight to Dr. Lermo's opinion that Proenza functioned poorly and had no ability in every domain. (R. 58-59). First, the ALJ explained that she gave little weight to Dr. Lermo's medical assessment of Proenza's ability to do work related activities because Dr. Lermo "failed to provide support for the

7

opinion on function limitations although specifically asked." (R. 58). The ALJ also noted Dr. Lermo's assessment was "void of any explanation, medical and clinical findings in support of her opinion." *Id*. Second, she discounted Dr. Lermo's opinion that Proenza was not able to work because findings of disability are reserved for the ALJ. *Id*.; *see Miles v. SSA*, 469 F. App'x 743, 745 (11th Cir. 2012) (stating "a medical source's statement that a claimant is 'unable to work' or 'disabled' does not bind the ALJ, who alone makes the ultimate determination as to disability under the regulations").

Third, the ALJ found good cause to discount Dr. Lermo's opinion because it was inconsistent with Dr. Lermo's own clinical notes and with the record. (R. 58). In support, the ALJ noted that Dr. Lermo's opinion that Proenza was unable to work was inconsistent with Proenza's Global Assessment of Functioning ("GAF") score of 55,[2] and her finding that Proenza was oriented in three spheres (R. 700, 708-09). The ALJ also noted that Dr. Lermo's opinion was inconsistent with her psychiatric progress notes in the record, which documented mostly "benign findings" indicative of no more than moderate limitations, including: clean appearance; clear quality of speech; normal to fair memory, insight, judgment and motor behavior; orientation in three spheres; organized thought process;

---

[2] GAF scores ranging between 51-60 indicate "moderate symptoms" or "moderate difficulty in social, occupational, or school functioning." American Psychiatric Ass'n Diagnostic and Statistical Manual of Mental Disorders, 32, 34 (4th ed. 2000) (hereinafter DSM-IV).

8

fair eye contact; pleasant or cooperative attitude; fair motivation; and fair reality testing. (R. 49-61, 473-80, 492-524, 527-29, 700-05).

Proenza argues that the ALJ mischaracterized the record as documenting mostly benign findings because Dr. Lermo's medical status examinations were replete with clinically significant findings. [ECF No. 17, p. 6]. However, the ALJ did not ignore the clinically significant findings; she merely indicated that the medical status examinations *mostly* indicated benign findings that support moderate, not poor, limitations. (R. 58-59, 473-80, 492-524, 527-29, 700-05).

Accordingly, the Undersigned finds that the ALJ did not err in her decision to discount Dr. Lermo's opinion because the ALJ properly articulated multiple reasons that provide good cause to do so, and her rationale is supported by substantial evidence. *See Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 528 (11th Cir. 2015) (internal quotations omitted) (holding that ALJ did not err in discounting medical opinion as "inconsistent with the other medical evidence" where "the treatment records [] consistently documented that the claimant was oriented to person, place, time and situation, affect animated, speech was clear and coherent, her thought processes were logical and goal-directed, and her insight and judgment were fair"); *see also Hunter v. Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015) (stating "we will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it").

### 2. Dr. Rocha

Proenza argues that the ALJ erred in providing greater weight to Dr. Rocha's opinion because Dr. Rocha's entire opinion was premised on the results of the Rey 15-Item Test ("Rey FIT"), which Proenza claims is unreliable for detecting malingering. [ECF No. 17, p. 14]. Proenza also argues that the ALJ's reliance on Dr. Rocha's opinion without obtaining the Rey FIT results was reversible error because the record was "inadequate or incomplete," presumably prejudicing Proenza's case. *Id.*

There is no evidence that Dr. Rocha's evaluation of Proenza was *entirely* based on Proenza's performance on the Rey FIT. In fact, Dr. Rocha's malingering determination was also based upon other findings, such as Dr. Rocha's observation that Proenza "exerted minimal effort" during the mental status part of her examination and "appeared to be malingering." (R. 486-88). Moreover, Dr. Rocha noted Proenza's knowledge of the date, year, month, day, floor, city and state, as well as knowledge of a fair amount of information, as well as Proenza's performance during Serial 7s.[3] *Id.* Dr. Rocha also noted Proenza's ability to make change for a dollar, and add, subtract, divide and multiply. *Id.*

Additionally, when considering what weight to afford Dr. Rocha's opinions, the ALJ relied on other evidence, including the consistency between Dr. Rocha's opinion with

---

[3] Serial 7s is a test involving the serial subtraction of seven beginning with the number 100. It is a conventional part of mental status evaluations of patients.

10

his own observations of Proenza's sensorium functions and Proenza's GAF score of 72.[4] (R. 49-61, 484-88). The ALJ also found that Dr. Rocha's opinion was consistent with Dr. Lermo's "benign findings" in the mental status examinations included in the record. (R. 473-80, 492-524, 527-29, 700-05).

The Undersigned finds that the ALJ is unlikely to have come to a different conclusion had she obtained the Rey FIT results because Dr. Rocha's opinion did not rely solely on the Rey FIT results and because the ALJ relied on other evidence in the record to determine what weight to afford Proenza's medical source opinions. (R. 49-61, 484-88). Accordingly, the Undersigned finds that even if failure to obtain the Rey FIT results was an error, the error was harmless because it would not have changed the outcome of the case. *See Morrison v. Astrue*, Case No. 08-80886-cv-Rosenbaum, 2009 U.S. Dist. LEXIS 95392, at *83 (S.D. Fla. October 13, 2009) (finding that the "ALJ's failure to state the weight accorded to . . . a treating physician was harmless error because giving controlling weight to that opinion would not have changed the outcome of this case").

The ALJ properly articulated multiple reasons for affording some weight to Dr. Rocha's opinion, including consistency with Proenza's medical status examinations and GAF scores. (R. 57). Therefore, the Undersigned finds that the ALJ's rationale is supported by substantial evidence.

---

[4]  GAF scores ranging between 71-80 indicate "no more than slight impairment in social, occupational, or school functioning." DSM-IV at 34.

## B.     The ALJ's RFC Determination is Supported by Substantial Evidence.

Proenza argues that the ALJ's RFC finding is not supported by substantial evidence. [ECF No. 17, p. 16]. Ultimately, Proenza argues that the ALJ's "failure to properly evaluate the opinion evidence on record . . . resulted in a flawed hypothetical posited to the VE that did not incorporate all of the functional limitations that would reasonably be supported by the record." *Id.* at pp. 17-18.

The ALJ has the responsibility of assessing the claimant's RFC. *See Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) ("We note that the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors."). According to Social Security Ruling 96-8p, the ALJ's RFC assessment must be based upon relevant evidence in the record, including the effects of treatment, reports of daily activities, lay evidence, recorded observations, evidence from attempts to work, and medical source statements. *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P (S.S.A. July 2, 1996). Here, substantial evidence supports the ALJ's finding that Proenza has the RFC to perform medium work. (R. 49).

Proenza argues that the ALJ should not have relied on the GAF scores because the Commissioner has regularly declined to endorse GAF scores for use in disability programs. [ECF No. 21, pp. 6-7]. While the Commissioner has concluded that there is no correlation between the GAF scale and an individual's ability to work, GAF scores may

still be "of considerable help to the ALJ in formulating the RFC." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). Proenza's GAF scores ranged between 52 and 68,[5] which indicates moderate symptoms at most. (R. 473-80, 492-524, 527-29, 700-05).

However, the ALJ also relied on evidence other than Proenza's GAF scores. (R. 49-61). The ALJ discussed Proenza's mental status examinations at length and noted that Proenza exhibited "a clean appearance, clear quality of speech, fair motor behavior, orientation in three spheres, fair eye contact, fair motivation, and fair reality testing." *Id.* Proenza also reported that she performed independent activities of daily living,[6] that her prescribed medications help manage her symptoms, and that she does not experience any side effects due to her medications. (R. 77-78, 433, 443, 475). The ALJ also considered in her RFC analysis that Proenza has not been hospitalized and has not required aggressive treatment. (R. 49-61).

Accordingly, the Undersigned finds that the ALJ properly considered relevant evidence in the record according to SSR 96-8p, and that substantial evidence supports the ALJ's RFC determination that Proenza has the ability to perform a range of medium work.

---

[5] GAF scores ranging between 51-60 indicate "moderate symptoms," while scores ranging between 61-70 indicate "some mild symptoms" or "some difficulty in social, occupational, or school functioning." DSM-IV at 34.

[6] Proenza stated that she bathes daily; cleans and does laundry weekly; drives, but not often; and goes to the store twice a week. (R. 78, 410-412).

### C. Substantial Evidence Supports the ALJ's Evaluation of Proenza's Subjective Complaints.

Proenza argues that the ALJ failed to properly assess her subjective symptoms and limitations. [ECF No. 17, p. 18]. The Undersigned disagrees. "[C]redibility determinations are the province of the ALJ, and [a court] will not disturb a clearly articulated credibility finding supported by substantial evidence." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (internal citations omitted) (finding ALJ's credibility finding supported by substantial evidence where ALJ "pointed to specific reasons for discrediting [the claimant's] subjective complaints of disabling pain"); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002) ("[W]e find that the ALJ made a reasonable decision to reject [the claimant's] subjective testimony, articulating, in detail, the contrary evidence as his reasons for doing so.").

The ALJ determined, after careful consideration of the evidence, that Proenza's medical impairments could reasonably be expected to cause her alleged symptoms, but that Proenza's statements concerning the intensity, persistence and limiting effects of her symptoms are "not entirely consistent with the medical evidence and other evidence in the record." (R. 56). The ALJ noted that the objective evidence does not indicate that Proenza's impairments were as severe as alleged or that she was unable to do any work. *Id.*

In support of her credibility determination, the ALJ pointed to Proenza's wage records, which indicated that she continued work activity through 2017. *Id.* The ALJ also

referred to the "benign findings" in Proenza's mental status examinations and Proenza's GAF scores, which indicate moderate symptoms. *Id.* The ALJ also noted that Proenza has never been hospitalized for her mental health symptoms, and that Proenza indicated that she has not experienced any side effects from her medication. *Id.*

Given that the ALJ has provided specific reasons for discrediting Proenza's subjective complaints, supported by the evidence, the Undersigned "will not disturb a clearly articulated credibility finding supported by substantial evidence." *See Mitchell*, 771 F.3d at 782.

## VI. Conclusion

The Undersigned **respectfully recommends** that the District Court **deny** Proenza's summary judgment motion, **grant** the Commissioner's summary judgment motion, and **enter a final judgment** in favor of the Commissioner.

## VII. Objections

The parties will have 14 days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within 14 days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interests of justice. *See*

29 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on August 4, 2020.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Marcia G. Cooke
All counsel of record

16